214 N.J. Super. 27 (1986)
518 A.2d 242
NICHOLAS TIERNEY, AN INFANT BY HIS GUARDIAN AD LITEM, BARBARA TIERNEY, AND BARBARA TIERNEY, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
ST. MICHAEL'S MEDICAL CENTER, VIRGINIA GUNNELL, AIDA CRUZ, CHRIS WILLIAMS, EDITH ELEFANTE, MARY FARLEY, AND ANGEL MUNOZ, DEFENDANTS-APPELLANTS, AND DR. PATRICK CINELLI, EILEEN DIAZ, DELORES BANKS, R. RAY AND M. ADAMS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1986.
Decided November 19, 1986.
*29 Before Judges ANTELL, LONG and D'ANNUNZIO.
Leonard Rosenstein argued the cause for appellants (Feuerstein, Sachs, Maitlin, Rosenstein & Fleming, attorneys).
Bernard A. Kuttner argued the cause for respondents (Kuttner, Toner & DiBenedetto, attorneys).
The opinion of the court was delivered by D'ANNUNZIO, J.S.C., temporarily assigned.
The infant plaintiff was hospitalized on September 19, 1981 at the age of 17 months. Two days later the mother of another patient reported to a nurse that the infant had fallen while attempting to climb out of his crib. X-ray examination of the child revealed a linear skull fracture. The plaintiffs conceded that the child suffered no neurological deficit as the result of the skull fracture but contended that the fracture was the proximate cause of certain behavioral disorders. The jury returned a verdict against the hospital and against six of the individual defendants in the amount of $400,000.00. These defendants appeal.[1]
Plaintiffs contended at trial that the defendants were negligent in failing to place the infant in a safety crib which would have prevented the infant from climbing out of it. In support of this theory of defendants' negligence the parents testified that they had advised the defendants to place their child in a safety crib because he was a "climber". An expert also testified in support of plaintiffs' theory. Defendants concede that this evidence could support a jury finding that the defendants were negligent. However, in addition to a jury charge on general negligence, the trial judge, at plaintiffs' request, also *30 charged the principles of res ipsa loquitur. Defendants contend that the res ipsa loquitur charge was not warranted in this case.
Although he did not use the phrase res ipsa loquitur, the trial judge instructed the jurors that they could infer that the accident was caused by the defendants' negligence if they find that the accident took place "under circumstances which would suggest that in the ordinary course of events it would not have happened without a lack of due care" and that the infant was under the exclusive control and care of the defendants and that there is no evidence that the incident was attributable to the infant's "voluntary act". This charge states the principles of res ipsa loquitur.
Specifically, defendants take exception to the first element of res ipsa loquitur charged by the court. They contend that a fall from a crib in a hospital setting does not bespeak negligence. We disagree and affirm the verdict of liability.
Res ipsa loquitur is a principle which permits, but does not compel, a jury to infer negligence from the mere happening of a particular event. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263 (1958), in which the rule is applied, is the classic case of an exploding bottle of soda pop. The rule creates a "permissive presumption that these circumstances furnish reasonable grounds for the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred." Id. at 269 The principle has been described as a rule of circumstantial evidence, Pisano v. S. Klein on the Square, 78 N.J. Super. 375 (App.Div. 1963), certif. den. 40 N.J. 220 (1963), and it is available to a plaintiff if it is more probable than not that the defendant's negligence was a proximate cause of the mishap. Buckelew v. Grossbard, 87 N.J. 512 (1981). Other cases in which our courts have held that res ipsa loquitur did apply, or should have applied, are Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595 (1958) (patron thrown from roller coaster); Rose v. Port of New York Authority, 61 N.J. 129 (1972) (traveler *31 collided with automatic door at airport); Pisano v. S. Klein on the Square, supra, (child's hand caught in escalator) and Terrell v. Lincoln Motel, Inc., 183 N.J. Super. 55 (App.Div. 1982) (motel guest fell through shower door attempting to escape burst of scalding water).
In most cases, the ability of a jury to draw an inference of negligence from the occurrence itself is based on the common experience and common knowledge of jurors. However, where the event is beyond the common experience of jurors, expert testimony may be utilized to establish that a particular event would not have occurred in the absence of negligence. Thus, in Buckelew v. Grossbard, supra, the plaintiff's bladder had been cut accidentally during exploratory abdominal surgery. The Court held that the trial court's failure to give the plaintiff the benefit of res ipsa loquitur was error because the testimony of plaintiffs' expert that the incident would not have occurred in the absence of negligence established the basis for an inference of negligence.
Although the appellants in the present case are a hospital and its health care staff, this matter is more appropriately regarded as a child care case rather than a medical malpractice case. The hospital was entrusted with the care of an infant of the age of 17 months. He was placed in a crib. The defendants had a duty to provide the infant with proper care, which included the duty to supervise him and make observations of him in his new environment. The evidence established that neither the individual defendants nor any other hospital employee were aware that the child had fallen from the crib until Nurse Farley was informed of the incident by the mother of another patient. Utilizing its common experience and common knowledge regarding the propensities of 17 month old infants and the level of observation and supervision reasonably necessary to protect them, the jury could conclude from the occurrence itself and the surrounding circumstances that the fall was proximately caused by defendants' negligence. Moreover, in this case, the common experience and common knowledge of *32 the jury was supplemented by the testimony of plaintiffs' expert witness, a nurse, who testified about the growth and development of toddlers: "They are all very active. They are all involved in discovering their environment, particularly when they are placed in an environment they are not familiar with. They tend to climb out of their crib."
In McDonald v. Foster, 170 Cal. App.2d 85, 338 P.2d 607 (Cal.Dist.Ct. of App. 1959), the court, in reversing a trial court's judgment for the defendant, held that res ipsa loquitur was applicable to a case in which a ten year old child admitted to the hospital for minor surgery, and under the influence of pre-operative medication, fell out of bed.[2] The court stated:
`As a general rule, res ipsa loquitur is applicable where it appears that the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. Stanford v. Richmond Chase Co., 43 Cal.2d 287, 292, 272 P.2d 764, 766, quoting from Zentz v. Coca-Cola Bottling Co., 39 Cal.2d 436, 442-443, 247 P.2d 344.' [Id., 338 P.2d at 614].
One of the policy principles underlying res ipsa loquitur is that of placing the burden of producing evidence upon the party with superior knowledge or opportunity for an explanation of the circumstances of the occurence. Bornstein v. Metropolitan Bottling Co., supra. That policy is particularly pertinent in this case because the injury occurred while the child was in the exclusive care and control of the defendants. Neither parent was present when it happened.
Although the liability judgment is sustained for the reasons expressed above, the matter must be remanded for a new trial as to damages. The court instructed the jury to consider permanent injury to the infant as an element of damage in the event it reached a verdict of liability. The impact of that instruction was exacerbated by the court's *33 reference to life expectancy tables and the infant's life expectancy. Clifford v. Opdyke, 156 N.J. Super. 208 (App.Div. 1978). There was no evidence to support these instructions or to support a finding of permanent injury. Plaintiffs' and defendants' testifying physicians agreed that the child was suffering from a behavior disorder but they disagreed as to its cause. During their testimony they did speculate regarding the permanent nature of this disorder but it is clear that their testimony was speculation predicated on a lack of treatment. This speculation was insufficient to submit the matter of permanent injury to the jury. Clifford v. Opdyke, supra. Submission of speculative permanent injuries to the jury was clearly capable of producing an inordinately high verdict.
Defendants also contend that the trial court's instruction regarding aggravation of a pre-existing injury was error. We agree that the instruction should not have been given because the evidence was insufficient to establish a pre-existing injury. In light of our remand based on the erroneous instruction regarding permanent injury, it is unnecessary for us to determine whether the pre-existing injury instruction was prejudicial to the defendants.
Reversed and remanded for a new trial as to damages.
NOTES
[1] Defendant Cinelli was granted summary judgment before trial. Defendants Diaz, Banks, Roy and Adams received dismissals at the close of plaintiffs' case.
[2] Siverson v. Weber, 57 Cal.2d 834, 372 P.2d 97, 22 Cal. Rptr. 337 (Sup.Ct. 1962), a surgery malpractice case, disapproved certain language in McDonald which suggested that the infrequency of a particular occurrence supported an inference (presumably of negligence).