873 A.2d 659 (2005)
377 N.J. Super. 562
Georgia KNIGHT, Plaintiff-Appellant,
v.
ESSEX PLAZA, a corporation or business organization, Stein & Rosen, a corporation or business organization,[1] and MacKenzie Automatic Doors, Inc., a corporation or business organization, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 2005.
Telephonically Reargued April 6, 2005.
Decided May 23, 2005.
*660 Randall Bass, Newark, argued the cause for appellant (Freeman & Bass, attorneys; Mr. Bass, on the brief).
Matthew L. Rachmiel, Clark, argued the cause for respondent Essex Plaza (Bumgardner, Ellis, McCook & Kingsley, attorneys; Mr. Rachmiel, on the brief).
Allan Maitlin, West Orange, argued the cause for respondent MacKenzie Automatic Doors, Inc. (Sachs, Maitlin, Fleming & Greene, attorneys; Mr. Maitlin, on the brief).
Before Judges WECKER and S.L. REISNER.
Reargued Before Judges COBURN, WECKER and S.L. REISNER.
The opinion of the court was delivered by
WECKER, J.A.D.
This case requires that we consider the relationship between two doctrines: the doctrine of res ipsa loquitur, and the common knowledge doctrine. Res ipsa loquitur *661 permits a plaintiff to satisfy the burden of presenting a prima facie case by allowing an inference of negligence against a defendant in certain circumstances without direct evidence of negligence. The common knowledge doctrine permits a plaintiff to meet the burden of presenting a prima facie case of negligence without an expert, in certain circumstances. Here, the motion judge rejected the applicability of res ipsa and dismissed plaintiff's complaint for lack of an expert. Plaintiff appeals from the summary judgment dismissing her negligence complaint against Essex Plaza, her landlord, and MacKenzie Automatic Doors, Inc., a maintenance company that repaired automatic doors in the senior citizens' apartment building where she lived. We now affirm.
Plaintiff claimed that on May 15, 2001, after the automatic doors at the front entrance of the building opened for her to enter, one door began to close prematurely and hit her, causing her to slip and fall and sustain significant injuries. From the sparse record before us, we note that plaintiff claimed in her deposition testimony that the door had malfunctioned before the day of the accident, but she did not remember how often, and she never complained to the management of Essex Plaza about it.[2] We also note that MacKenzie had no ongoing contract for door maintenance at Essex Plaza, but only responded to calls for service. Before plaintiff's accident on May 15, 2001, MacKenzie had last performed maintenance on the door on March 31, 2001.[3] There is no direct evidence that MacKenzie failed to properly repair the door on that occasion or any other.
In support of its summary judgment motion, the attorney for Essex Plaza argued: "I don't think there's any dispute that  that the door closed on her." Each defendant addressed the question whether plaintiff needed an expert in order to reach a jury. Essex Plaza's attorney maintained that plaintiff was required to establish a "specific malfunction ... before we get to an expert opining as to whether there was negligence," adding that "even if there is an expert that doesn't necessarily get over the res ipsa argument." MacKenzie's counsel argued that "operations of the automatic door are very technical, and can really only be proved through an expert opinion." Counsel also argued that "this case does not fall under the three criteria for res ipsa, and [plaintiff has] put forth no affirmative evidence to exclude other probable causes of why this door allegedly malfunctioned."
The motion judge granted defendants' motion for summary judgment on the ground that plaintiff had failed to provide an expert report:
All right, folks, I am going to grant summary judgment to both parties, both Essex Plaza and Mackenzie's Doors [sic]. There's been no notice of a defect at all. The last time the doors were serviced was three months prior to the accident, the doors were working fine. *662 They put in new roller guides on the bottom of the door. Even as the testimony of the plaintiff alone, everything she described to in her like 30, 40 page deposition is of a properly operating door. Either she wasn't paying attention probably or the door was closing, but when she interfered with the beam of light it opened right back up again. There is absolutely no expert report against either party, which is definitely mandated in this case, because that's the only way we're going to know if that door wasn't operating and functioning properly.
Thus it appears that the judge rejected the applicability of res ipsa and held that plaintiff was required to produce an expert to describe a specific defect or malfunction of the door. We agree that plaintiff's case required an expert, but disagree that plaintiff could not have relied on res ipsa if she had offered an expert to establish the necessary foundation.
Plaintiff seeks, as she did in the Law Division, to invoke the doctrine of res ipsa loquitur to permit an inference of negligence from the very happening of the accident, without the need for any expert testimony. Plaintiff relies on two cases in support of her contention that expert testimony is unnecessary, and that res ipsa loquitur permits a jury to infer negligence on the part of one or both defendants. Those cases are Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1 (1974) (where part of a surgical instrument was left in the body of an unconscious patient, and all potential defendants were named but plaintiff could not prove which defendant was responsible, each had the burden of proof to exculpate itself), and Nopco Chem. Div. v. Blaw-Knox Co., 59 N.J. 274, 281 A.2d 793 (1971) (where the buyer who received a damaged machine almost certainly would have had a cause of action against one of the defendants, each of whom had exclusive control over the machine at a different time, but the buyer did not know which one caused the damage, the burden of production shifted to the defendants). The plaintiff in each of those cases had an expert; neither case directly supports plaintiff's position that she needs no expert because res ipsa applies.
Res ipsa loquitur "is not a theory of liability; rather, it is an evidentiary rule that governs the adequacy of evidence in some negligence cases." Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 95, 723 A.2d 45 (1999). The doctrine "is a method of circumstantially proving the existence of negligence." Ibid. It permits an inference of negligence without direct evidence where three elements are established: (1) the event does not normally happen in the absence of negligence, (2) the instrument of harm was exclusively within the defendant's control, and (3) there is no indication that the plaintiff caused her own injury.[4]Ibid. Where applicable, res ipsa allows a plaintiff to establish a prima facie case and to withstand a motion to dismiss for lack of direct proof of negligence. Res ipsa does not shift the burden of proof to the defendant, but only the burden of producing evidence. Id. at 96, 723 A.2d 45.
The doctrine turns on an assessment of the probability that the accident, whatever its nature, would not have happened unless the defendant had failed in *663 its duty of due care. Id. at 95-96, 723 A.2d 45. It is also based on an assessment that the plaintiff does not have access to the evidence that would tend to prove or disprove a lack of due care, and that such evidence is more available to the defendant. Id. at 96, 723 A.2d 45; Rose v. Port of N.Y. Auth., 61 N.J. 129, 137, 293 A.2d 371 (1972).
Assuming that a jury believes that the automatic door hit plaintiff as she described, we must consider whether such an accident is one that would not normally happen in the absence of negligence, that is, one that "bespeaks negligence" without direct proof of any specific negligent act, thereby satisfying the first element of a res ipsa case, and whether the jury can do so based on common knowledge and experience without the need for expert testimony. The issue we must decide is whether common knowledge would allow lay jurors to determine whether it is probable that the accident would not have occurred but for a failure of due care on the part of the defendant (not whether the defendant failed in some specific way to act with due care).
We addressed that very question in the context of a medical malpractice action in Roper v. Blumenfeld, 309 N.J.Super. 219, 229-31, 706 A.2d 1151 (App.Div.), certif. denied, 156 N.J. 379, 718 A.2d 1208 (1998), where we described the res ipsa doctrine as "grounded in probabilities as to an accident's having occurred without negligence on the part of a defendant." Id. at 230, 706 A.2d 1151. The jury in Roper found that the defendant's dentist did not deviate from the applicable standard of care while extracting the plaintiff's tooth, and therefore was not liable for her subsequent facial numbness. We reversed and ordered a new trial because the judge erred in failing to charge res ipsa. There, the plaintiff had an expert, who testified that the numbness plaintiff claimed to have experienced immediately after the defendant's treatment would not ordinarily have occurred in the absence of a deviation from the dentist's standard of care  that is, in the absence of negligence. Thus the plaintiff's expert supplied the essential foundation for a res ipsa charge. See also Buckelew v. Grossbard, 87 N.J. 512, 525-26, 435 A.2d 1150 (1981).
In Roper, Judge Conley explained the relationship between the expert's testimony and res ipsa:
Unlike the related but distinct doctrine of common knowledge, res ipsa loquitur requires expert testimony "to the effect that the medical community recognizes that an event does not ordinarily occur in the absence of negligence."
....
[I]f res ipsa loquitur is to be relied upon, there must be expert testimony to the effect that the medical community recognizes that the injury would not have occurred without negligence so as to establish the first element of res ipsa loquitur.
[309 N.J.Super. at 230-31, 706 A.2d 1151 (internal citations omitted).]
By contrast, in a case involving a fall in a hospital that was not a medical malpractice but rather an "ordinary" negligence case, we explained the difference between two types of res ipsa cases, one type requiring an expert and the other not:
In most cases, the ability of a jury to draw an inference of negligence from the occurrence itself is based on the common experience and common knowledge of jurors. However, where the event is beyond the common experience of jurors, expert testimony may be utilized to establish that a particular event would not have occurred in the absence of negligence.

*664 [Tierney by Tierney v. St. Michael's Med. Ctr., 214 N.J.Super. 27, 31, 518 A.2d 242 (App.Div.1986), certif. denied, 107 N.J. 114, 526 A.2d 184 (1987).]
In Tierney, a hospitalized seventeen-month-old infant fell while trying to climb out of his crib. We held:
Utilizing its common experience and common knowledge regarding the propensities of 17 month old infants and the level of observation and supervision reasonably necessary to protect them, the jury could conclude from the occurrence itself and the surrounding circumstances that the fall was proximately caused by defendants' negligence.
[Ibid.]
There, Judge D'Annunzio noted that "the common experience and common knowledge of the jury was supplemented by the testimony of plaintiffs' expert witness, a nurse, who testified about the growth and development of toddlers." Id. at 31-32, 518 A.2d 242. In emphasizing the jury's "common experience and common knowledge," we did not hold the (supplemental) expert's testimony essential to plaintiff's reliance on res ipsa.
We restate the question before us: was an expert required in order for plaintiff to establish that the automatic door probably would not have hit her in the absence of one or both defendants' negligence, or was this a "common knowledge" case with respect to the probability that the door would not have hit plaintiff in the absence of a defendant's negligence?
To answer that question, we have considered the Supreme Court's decision in a remarkably similar case. Rose v. Port of N.Y. Auth., 61 N.J. 129, 293 A.2d 371 (1972). There, the plaintiff "claimed his injury was sustained when he walked into or was struck by an automatic glass door" at the John F. Kennedy International Airport.[5]Id. at 132, 293 A.2d 371. The Law Division judge in that case denied the Port Authority's motion to dismiss at trial, and plaintiff prevailed before the jury. Ibid. This court reversed, finding insufficient evidence of both negligence and proximate cause, but the Supreme Court reinstated the verdict. Id. at 136, 293 A.2d 371.
The plaintiff in Rose had called an employee of the door's manufacturer to explain the mechanical operation of the door  that is, to educate the jury. The plaintiff also presented his own engineering expert. That expert described several unsafe aspects of the door's design and installation, but was unable to offer an opinion that "[any] of the suggested defects had in fact occurred or were responsible for the accident." Ibid. The Court said:
Upon this presentation we think the trial court was correct in denying defendant's motion. Considering first the issue of negligence, although it is true that no specific kind of malfunction was established, we do not think it was necessary for the plaintiff, in order to present a prima facie case, to prove more than he did.
[Ibid.]
Rose does not explicitly tell us which proofs were enough to meet the plaintiff's burden to present a prima facie case. There is no express holding in Rose either that the plaintiff did or did not require the expert testimony he presented in order for the jury to be permitted to draw an inference of negligence. Whether Rose implicitly determined the necessity of the expert testimony, as opposed to its sufficiency, is left for us to determine.
*665 Because the instrument of injury in Rose was so similar to that before us, we must carefully consider whether presentation of the plaintiff's expert witness to describe the possible areas of malfunction was essential to the Court's holding that Mr. Rose presented a prima facie case. The cases discussed in Rose to explicate the res ipsa doctrine are cases in which there appears to have been no expert testimony. But in Rose itself, the plaintiff called two witnesses whose background, training and experience served to educate the jury about the design and functioning of the automatic door and the possible sources of its malfunction. See N.J.R.E. 702.
Justice Mountain began his analysis in Rose by listing the three elements of a res ipsa case, citing Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 141 A.2d 301 (1958) (a Palisades Amusement Park patron fell from a roller coaster ride), and Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 139 A.2d 404 (1958) (a restaurant worker was injured by an exploding soda bottle). In each of those cases, the jury was permitted to infer negligence in the absence of any expert testimony, and a verdict for the plaintiff was upheld. In neither case, however, was the absence of expert testimony directly raised on appeal, but only the overall sufficiency of the evidence.[6]
Returning to the facts before the Court in Rose, Justice Mountain wrote:
Here the occurrence bespeaks negligence. Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury. What happened to the plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect.
[Rose, supra, 61 N.J. at 136-37, 293 A.2d 371.]
While that description fits this case as well, it does not answer the question whether plaintiff's expert in that case was essential to the availability of a res ipsa charge.
We look again to the Rose opinion. Justice Mountain discussed Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966), at some length. There, the plaintiff slipped and fell on a string bean on the floor of a supermarket. The Court reversed a dismissal at the end of plaintiff's case, reasoning that the customer was not in a position to determine what negligence had occurred, and the defendant, who was in a better position to do so, could fairly be called upon "to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his." 47 N.J. at 430, 221 A.2d 513. Justice Mountain applied the same reasoning to the automatic door in Rose:
That the door did not function properly seems highly probable, but it should not be the burden of the plaintiff to come forward with proofs as to the precise nature of the probable malfunction. His expert witness did suggest several things that might have gone wrong; he was hardly in a position to pinpoint the actual operational failure that did occur. Such a task might very likely be insuperable. Under such circumstances it is fair to call upon the defendant for an explanation.
[Rose, supra, 61 N.J. at 137, 293 A.2d 371 (emphasis added).]
*666 Of course, the plaintiff in Rose did present expert testimony (through the door manufacturer's employee as well as plaintiff's own engineer) to explain and educate the jury about the door's mechanism and the possible causes of malfunction.[7] The thrust of the Supreme Court's Rose opinion can be discerned from the words emphasized in the above-quoted portion of that opinion: that plaintiff did not have the burden of producing evidence of "the precise nature of the probable malfunction." Ibid. We are convinced that the expert testimony was material to the application of res ipsa in Rose. The parallel between Rose and Wollerman, noted by Justice Mountain, lay in the unfairness of requiring a plaintiff to produce proof of a specific defect or act of negligence when the defendant was in the best (and perhaps the only) position to provide the necessary information, and in any case would be able to explain how and why its conduct was reasonable under the circumstances.
In a recent case involving legal malpractice, where the defendant attorney's negligence involved his mishandling of a negligence action involving an automatic door, the majority read Rose to hold
that the experts' opinions as to possible malfunctions of the door were sufficient to withstand a Rule 4:37-2(b) motion for involuntary dismissal under a res ipsa loquitur theory, even though the experts were unable to pinpoint the actual operational failure that did occur.
[Jerista v. Murray, 367 N.J.Super. 292, 301, 842 A.2d 840 (App.Div.2004), appeal filed, No. A-5-04].[8]
The majority in Jerista affirmed dismissal of the legal malpractice action on the ground that the plaintiff could not prove the underlying tort action  the "case within a case"  without an expert. In his dissent, Judge Kestin found it unconscionable to allow the blatantly negligent lawyer to avoid responsibility for his own failure to prepare the underlying case.
In another case, while addressing the claims of plaintiffs who were injured when a stairway collapsed, the Court explained that where the three elements of a res ipsa case are apparent,
a plaintiff need not exclude all other possible causes of an accident as a condition of entitlement to the doctrine [of res ipsa loquitur], provided he can show that it is more probable than not that the defendant's negligence was a proximate cause of the mishap. See Lynch v. Galler Seven-Up Pre-Mix Corp., 74 N.J. 146, 154, 376 A.2d 1211 (1977).
[Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291-92, 471 A.2d 25 (1984) (emphasis added)].
The key to the availability of res ipsa is a plaintiff's ability to demonstrate, due to the nature of the incident combined with one or more defendants' control of the instrumentality, the probability that a defendant's negligence was involved.
The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of *667 the accident was probably "such that the defendant would be responsible for any negligence connected with it." That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door.
[Id. at 292, 471 A.2d 25 (internal citations omitted).]
In other words, when a reasonable inference can be drawn "that defendant's control over the instrumentality under the circumstances was such that some act of negligence on its part was a contributing cause of the resulting accident, an explanation dissipating separate inferences of ... negligence by defendant or others does not defeat the application of res ipsa loquitur." Ibid.[9]
Like the owner of the premises in Brown, Essex Plaza owed plaintiff a duty to provide reasonably safe premises, including the duty of due care with respect to inspection and maintenance of the building's automatic entry doors. See id. at 290, 471 A.2d 25; see also Rosenberg v. Otis Elevator Co., 366 N.J.Super. 292, 303, 841 A.2d 99 (App.Div.2004). In Brown, the plaintiff did not offer expert testimony with respect to the defect that caused the collapse. But there the building's owner conceded that the construction was defective; his defense was that the former owner was responsible for the installation and the defect was not apparent on inspection. Addressing the main issue in the case  whether the present owner could be responsible for the collapse  the Court held that the jury could infer the present owner's failure "to discharge the duty of due care ... to make a reasonable inspection that would have disclosed the existence of the defect." Brown, supra, 95 N.J. at 293, 471 A.2d 25.
We have asked ourselves whether it is within the common knowledge and experience of lay persons on a jury to determine that an accident like this one is unlikely to happen in the absence of negligence, or whether an expert is needed to educate the jury about the nature of the automatic door, so that it can make such a determination. The issue is not whether the mechanism involved in the accident was "complex machinery," but whether expert testimony is required in order for lay persons to reach a reasoned decision that the mechanism was unlikely to have failed in the absence of a defendant's negligence. Compare Allendorf v. Kaiserman Enters., 266 N.J.Super. 662, 630 A.2d 402 (App.Div. 1993), with Gore v. Otis Elevator Co., 335 N.J.Super. 296, 762 A.2d 292 (App.Div. 2000).
In Allendorf, circumstances that included notice to the defendant of certain damage to its elevator door, plus evidence of the door's poor state of repair, was enough to establish the first element of a res ipsa case without an expert. Contrariwise, in Gore, recent municipal inspection, as well as pre- and post-accident inspection by defendant's mechanic, had revealed no problem, and no prior complaints about the elevator door had been received. Hence we concluded that plaintiff's expert's net opinion (his report and deposition testimony failed to address the possible ways in which defendant's defective maintenance, which was plaintiff's theory *668 of the case, could have caused the accident) was insufficient to support a res ipsa instruction.
In Rosenberg v. Otis Elevator Co.,[10]supra, Judge Landau discussed the jurisprudential question raised by the case before us:
Defendants contend that [Gore and Jimenez[11]] mandate that expert testimony must support every claim in which resipsa loquitur is invoked by a plaintiff in a case involving a complex instrumentality. We think it appropriate to clarify that out reading of those cases, and the authorities upon which they rely, reveals their proper focus upon the sufficiency of evidence tending to reduce or rule out the likelihood of causes other than those attributable to the defendant(s). While the complexity of such evidence may typically require expert testimony to explain and evaluate it in lay language, it is also true that evidence sufficient to infer negligent causation need not always be as complex as the instrumentality.
[366 N.J.Super. at 305, 841 A.2d 99.]
We subscribe to those comments.
In a case such as this, it is important for the trial court to recognize that even when a "complex" mechanical device is involved in an accident, a lay jury may be able, without expert testimony, to discern whether the accident probably would not have happened in the absence of negligence.
Common knowledge and experience are insufficient to allow a jury to determine whether the door likely would have hit plaintiff in the absence of negligence on the part of one or both defendants, either in inspection, maintenance, or repair. Plaintiff thus could not rely on res ipsa loquitur alone to permit an inference of negligence that would shift to each defendant the burden of producing evidence to establish its own due care.
We do not read Rose necessarily to require expert testimony just because "complex" machinery may have been involved. The message we derive from Rose is that in cases of this nature (where expert testimony is both necessary and sufficient to allow an inference of the defendant's negligence), an expert is required only to explain the mechanism and its potential malfunction(s), but not to opine as to the specific malfunction or act of negligence that caused the accident.
Plaintiff was not required to produce an expert to identify a specific malfunction or defect attributable to one or both defendants, but she was required to provide expert testimony to explain the mechanics of the automatic door and its likely areas of malfunction (as did the plaintiff in *669 Rose).[12]See Gore v. Otis Elevator Co., 335 N.J.Super. 296, 762 A.2d 292 (App.Div. 2000), where we concluded:
We do not suggest that plaintiff's expert was required to "pinpoint the causal negligent act." To serve as the foundation for application of res ipsa loquitur, however, such expert testimony should have provided an explanation in lay terms of the possible ways in which the accident could have occurred that would more likely than not point to defendant's negligence as a substantial contributing cause.
[Id. at 304, 762 A.2d 292 (internal citation omitted).]
In reaching our conclusion in this case, we have also considered that neither defendant had exclusive control over the door; that plaintiff presented no evidence that Essex had prior notice of any malfunction of the door; and that MacKenzie was only required to service the door if called. In light of these facts, and in the absence of expert testimony as to how or why such a door might malfunction, a jury could do no more than speculate as to whether either defendant was responsible for the accident.
Affirmed.
NOTES
[1] No answer was filed on behalf of Stein & Rosen.
[2] In answer to the question "Did you ever tell anyone that there was a malfunction at the door?" plaintiff said "No."
[3] The record includes invoices from MacKenzie to Essex Plaza for service to the sliding doors at the front entrance. The last two invoices prior to plaintiff's fall were for service on December 21, 2000 and March 31, 2001. The December invoice refers to "MAIN ENTRANCE DOORS" and says: "ADJUSTED BOTH DOORS FOR REDUCED OPENING/DOORS WORK PROPERLY." The March invoice refers to "MAIN ENTRANCE LOBBY DOORS" and says: "REPLACED BOTTOM ROLLER GUIDE MADE ALL NECESSARY ADJUSTMENTS CHECKED OPERATION OF DOORS." That invoice includes a charge for a "BOT GUIDE."
[4] The third element refers to a plaintiff's control over the instrumentality of the injury. See Model Jury Charge (Civil), § 5.13 n. 6. Whether plaintiff was careless in some way that contributed either to being hit by the door or falling down is not the test. Only if plaintiff could be said to have done something to make the door malfunction would her conduct necessarily defeat her reliance on res ipsa.
[5] The automatic door involved in Rose was the kind that swings open, whereas the door in this case apparently was one that slides open.
[6] In Kahalili, the Court emphasized the obvious danger posed by the roller coaster and the defendant's high duty of care. In Bornstein, the disputed issue was the defendant bottling company's "control" over the bottle, in light of the fact that it exploded after delivery to a retailer.
[7] Before concluding that res ipsa applied in Rose, Justice Mountain summarized two witnesses' trial testimony: (1) an employee of the company that manufactured and designed the door, who "testified in detail as to the manner of its operation" and "described three mechanical components which combine to make the door function properly"; and (2) plaintiff's expert, a professor of mechanical engineering, who described four unsafe aspects of the design or installation, but could not say that any of them "had in fact occurred or been responsible for the accident." 61 N.J. at 135-36, 293 A.2d 371.
[8] Jerista was argued in the Supreme Court on January 4, 2005.
[9] The motion judge's speculation in this case that plaintiff probably "wasn't paying attention" is both unsupported in the record and irrelevant to the question whether an expert was required to establish that such an accident normally would not happen in the absence of negligence. Plaintiff was not required to eliminate her own contributory negligence as a possible factor in order to survive summary judgment. Her contribution to the happening of the accident would be a question for the jury.
[10] Rosenberg involved a three-story fall of a passenger elevator, where the plaintiffs were apparently surprised at trial by a motion for summary judgment based on their lack of an expert witness. An earlier motion for summary judgment had been denied, and the motion judge had held that plaintiffs could rely upon res ipsa loquitur without the need for an expert. We determined that in light of the surprise engendered by the trial judge's understandable reliance upon our then recent decision in Gore v. Otis Elevator Co., 335 N.J.Super. 296, 762 A.2d 292 (App.Div.2000), to conclude that an expert was necessary, the matter should be remanded to allow plaintiff time to obtain an expert.
[11] In Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 670 A.2d 24 (App.Div.1996), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996), we affirmed dismissal of plaintiff's negligence claim involving an escalator accident after rejecting plaintiff's invocation of res ipsa. There, however, there was evidence that plaintiff's conduct on the escalator actually caused or contributed to the alleged malfunction of the handrail, thereby negating the third element essential to the doctrine.
[12] Another panel of this court recently affirmed a judgment dismissing a negligence complaint involving an elevator door for lack of expert testimony, and held that "the closing and timing mechanisms of elevator doors are complex instrumentalities requiring plaintiff to present expert testimony to establish a defective mechanism or negligence in the maintenance of the mechanism." Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J.Super. 463, 476, 868 A.2d 364 (App.Div.2005). Plaintiff's attempt to invoke res ipsa was rejected in that case. We read the language quoted above to require, as a prerequisite to invoking res ipsa, that a plaintiff present expert testimony to establish the probability that the elevator doors would not have closed on the plaintiff in the absence of "a defective mechanism or negligence in the maintenance of the mechanism," and not necessarily to establish a specific defect or act of negligence. See ibid.