762 A.2d 292 (2000)
335 N.J. Super. 296
Gerald Edward GORE, Plaintiff-Appellant,
v.
OTIS ELEVATOR COMPANY, Defendant-Respondent, and
Cushman and Wakefield, ABC Corp. (1-5 fictitious names) and John Doe/Jane Doe (1-5 fictitious names), Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 2000.
Decided December 4, 2000.
*294 Irwin B. Seligsohn, West Orange, argued the cause for appellant (Goldberger, Seligsohn & Shinrod, attorneys; Mr. Seligsohn, on the brief).
Richard B. Livingston, Springfield, argued the cause for respondent.
Before Judges BAIME and LINTNER.
*293 The opinion of the court was delivered by BAIME, P.J.A.D.
Plaintiff appeals from a summary judgment dismissing his complaint against defendant Otis Elevator Company. He asserts that the Law Division judge erred by failing to apply the doctrine of res ipsa loquitur. We disagree and affirm the judgment entered.
Plaintiff alleged that he was injured while entering an elevator. He claimed that the elevator doors closed on him with such force as to cause his keys to tear the lining of his pants. Plaintiff did not contend that the elevator was defectively designed. He asserted, instead, that defendant negligently maintained the doors.
The doors had two safety devices: (1) a rubber safety edge running along the side of the doors, which was designed to retract upon contact, and (2) electric eyes in the top and bottom sides of the doors which would reopen them if the beam was broken by an object in its path. The evidence indicated that these safety devices were not foolproof. Both safety devices were functional only if an individual or object was located between the elevator doors. The hard edge of the exterior portion of the door could come in contact with an object or person without activating either the electronic eye or the safety edge.
Thomas Farrell, one of defendant's elevator mechanics permanently stationed in the office building in which the accident occurred, testified that he tested the elevators on a weekly basis. Although he did not know the exact force required to be exerted to cause the doors to retract, Farrell indicated that the elevator was safe for both an "eighty-five year old" person and a "three year old" person. In testing the elevators, Farrell would exert pressure on the safety edge to ensure that the doors would retract. In addition, he would periodically check the electric beams by using a voltage meter. The elevator in question was checked shortly before and shortly after the accident and was found to be in proper working order. So too, municipal inspectors had tested the elevator two weeks prior to the accident and had issued a certificate of compliance.
Plaintiff's expert, Louis Howarth, submitted a report which was supplemented by his deposition testimony. He asserted that "the force necessary to prevent the closing of the hoistway doors, and power operating doors from rest [should] not be more than thirty pounds." Although Howarth never visited the site or inspected the elevators, he surmised that "the closing force was in excess of the allowable thirty pounds." Noting that Farrell did not know "the force that the doors exerted on closing," Howarth concluded, "if the retractable safety edge and electric eye [had] worked properly the accident would not have occurred." Assigning blame to Farrell, Howarth asserted, "without properly testing the doors' closing force it is entirely probable they could have malfunctioned...."
We agree with the Law Division judge that this evidence was too slim a reed to support application of the res ipsa loquitur doctrine. The Latin phrase means "the thing speaks for itself." The rule creates an allowable inference of negligence when the following three conditions have been met: "(1) the occurrence itself ordinarily bespeaks negligence, (2) the instrumentality was within the defendant's exclusive control, and (3) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 95, 723 A.2d *295 45 (1999); Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288-92, 471 A.2d 25 (1984); Vespe v. DiMarco, 43 N.J. 430, 437, 204 A.2d 874 (1964). Where applicable, the doctrine is a method of circumstantially proving the commission of a negligent act. Tierney v. St. Michael's Medical Center, 214 N.J.Super. 27, 30, 518 A.2d 242 (App.Div.1986), certif. denied, 107 N.J. 114, 526 A.2d 184 (1987).
Whether an occurrence ordinarily bespeaks negligence is based on the probabilities a party acted without the exercise of due care. Thus, res ipsa loquitur is available "if it is more probable than not that the defendant has been negligent." Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. at 95, 723 A.2d 45. Stated somewhat differently, the proper test of the applicability of the doctrine is whether there is evidence from which the court can find that in the ordinary course of things, the mishap, more likely than not, was the result of the defendant's negligence. Hillas v. Westinghouse Electric Corp., 120 N.J.Super. 105, 113, 293 A.2d 419 (App. Div.1972).
We agree that an automatic door closing like a vice upon a person attempting to enter an elevator is an occurrence that bespeaks negligence or a product defect. But more is required under the res ipsa loquitur doctrine. Specifically, the evidence must support a reasonable inference that it was the defendant who was at fault.
This qualification can best be illustrated by comparing the facts of this case with those present in Allendorf v. Kaiserman Enterprises, 266 N.J.Super. 662, 630 A.2d 402 (App.Div.1993). There, the plaintiff sued an elevator maintenance company for injuries sustained when the elevator doors closed as she was attempting to enter the unit. Several weeks before the accident, the defendant received a report that an "anti-skid" device had been wedged under the bottom of the elevator door. The defendant's mechanic removed the device, but discovered that the safety edge on the elevator door had been bent. The mechanic straightened the safety edge "as best [he] could." He also tried to readjust the electric eye so that it would not be activated by the bend in the safety edge, but it was unclear whether he was successful in this endeavor. Early on the day of the accident, the defendant received a report that the elevator door was sticking. A mechanic was sent to fix the problem. Exactly what repair work was done was not known. Plaintiff's expert concluded that the electric eye safety device was known to be out of service for a long enough time prior to the accident to have been repaired. He also found that the elevator was generally in a poor state of repair during the period prior to plaintiff's accident.
Under these circumstances, we held that the evidence "provided a sufficient basis for the court to submit a res ipsa loquitur instruction to the jury." Id. at 668, 630 A.2d 402. We said that "there was no evidence that the malfunction of the elevator... could have been caused by any party other than the defendants." Id. at 671, 630 A.2d 402.
The facts here are in stark contrast to those in Allendorf. Unlike Allendorf, the evidence did not support an inference that the elevator was poorly maintained. In contrast to Allendorf, the evidence did not indicate that defendant had completed a major repair pertaining to the safety edge and the electric eye shortly before the accident. Nor was there evidence indicating that the electric eye was out of service prior to the accident. Nor do the facts indicate that defendant received a complaint concerning the retractable doors immediately prior to the accident, and actually performed repairs at that time. Rather, the uncontradicted evidence disclosed: (1) the elevator had been inspected by municipal officials and a certificate of compliance had been issued two weeks before the incident, (2) the doors had been examined by defendant's mechanic shortly before *296 and shortly after the accident and no defect had been found, (3) no complaint had been received concerning the elevator prior to the incident, and (4) no complaints, other than that of plaintiff, were reported after the accident.
We also have occasion to comment on the report and deposition testimony of plaintiff's expert. The requirement for expert testimony in complex instrumentality cases results logically from New Jersey law that res ipsa loquitur is inapplicable where the injured party fails to exclude other possible causes of the injury. Jimenez v. GNOC Corp., 286 N.J.Super. 533, 544, 670 A.2d 24 (App.Div.1996). While the plaintiff need not reduce altogether the possibility of other causes, he must bring forth affirmative evidence that tends to "`exclude other possible causes of the injury'." Ibid. (quoting Hillas v. Westinghouse Electric Corp., 120 N.J.Super. at 114, 293 A.2d 419). Clearly then, "a plaintiff is not entitled to bring his case to a jury under res ipsa loquitur any time there is an unexplained accident for which a defendant might plausibly be responsible." Id. at 545, 293 A.2d 419. Rather, "a plaintiff has the burden of producing evidence that reduces the likelihood of other causes so `that the greater probability [of fault] lies at defendants's door.'" Ibid. (quoting Eaton v. Eaton, 119 N.J. 628, 640, 575 A.2d 858 (1990)). "Without an expert, or even with an expert whose testimony constitutes a net opinion, the plaintiff has not excluded possible causes of the alleged incident and thus cannot take advantage of res ipsa loquitur." Ibid.
Applying these principles, we are convinced that plaintiff did not produce expert testimony that could reasonably "guide [a] jury in determining whether the incident occurred, more likely than not, as a result of defendant's negligence." Ibid. Indeed, a substantial portion of Howarth's report concerned the possibility that the elevator doors were defectively designed because the placement of the electric eyes would not cause the doors to retract if the individual attempting to enter the elevator bent down and straddled the entranceway. We need not comment on the permutations of bodily contortions envisioned by Howarth that could produce such a result. Suffice it to say that the Law Division was clearly befuddled by some of Howarth's statements, and for good reason. The point to be stressed here is that plaintiff's claim against defendant did not rest on the thesis of defective design, but rather on the thesis of negligent maintenance. To the extent that Howarth's criticisms pertained to the design of the elevator, they detracted from the possibility that the elevator malfunctioned by reason of defendant's negligent maintenance.
We do not suggest that plaintiff's expert was required to "pinpoint the causal negligent act." Ibid. To serve as the foundation for application of res ipsa loquitur, however, such expert testimony should have provided an explanation in lay terms of the possible ways in which the accident could have occurred that would more likely than not point to defendant's negligence as a substantial contributing cause. Id. at 546, 575 A.2d 858. Howarth's report and deposition testimony did not satisfy this foundational requisite. The conclusion ultimately drawn by Howarth constituted a net opinion. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981).
Accordingly, the summary judgment is affirmed.