841 A.2d 99 (2004)
366 N.J. Super. 292
Joseph ROSENBERG and Sandra Rosenberg, Plaintiffs-Appellants,
v.
OTIS ELEVATOR COMPANY, Bellemead Urban Renewal Corporation and Bellemead-Seton Hall Urban Renewal Association, L.P., Defendants-Respondents, and
United Technologies/Otis Elevator, Seton Hall University, Bellemead Management Company, Inc., First Bellemead Urban Renewal Corporation, Technical Inspections, Inc., International Fidelity Insurance Company, and Steve Mason, Defendants.
Corrado Gigante and Mary Gigante, Per Quod, Plaintiffs-Appellants,
v.
Otis Elevator Company, Bellemead Urban Renewal Corporation and Bellemead-Seton Hall Urban Renewal Association, L.P., Defendants-Respondents, and
United Technologies/Otis Elevator, Seton Hall University, Bellemead Management Company, Inc., First Bellemead Urban Renewal Corporation, Technical Inspections, Inc., International Fidelity Insurance Company, and Steve Mason, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2003.
Decided January 29, 2004.
*100 Robert P. McKevitt, argued the cause for appellants Joseph and Sandra Rosenberg (Rosenberg, Kirby, Cahill & McKevitt, attorneys; Mr. McKevitt, on the brief).
Anthony C. Sartori, West Paterson, argued the cause for appellants Corrado and Mary Gigante.
Michael J. O'Mara, argued the cause for respondent Otis Elevator Company (Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, attorneys; Mr. O'Mara, of counsel; Sharon M. Dostmann, on the brief).
William P. Cunningham, Florham Park, argued the cause for respondents Bellemead Urban Renewal Corporation and Bellemead-Seton Hall Urban Renewal Association, L.P. (Heim & McEnroe, attorneys; Mr. Cunningham, on the brief and joins in the brief of respondent Otis Elevator Company).
*101 Before Judges LINTNER, LISA and LANDAU.
LANDAU, J.A.D. (Retired and temporarily assigned on Recall).
Plaintiffs Joseph Rosenberg and his wife, Sondra Rosenberg, and plaintiffs Corrado Gigante and his wife, Mary Gigante, appeal from a summary judgment, rendered to defendants Otis Elevator Company (Otis), Bellemead Urban Renewal Corporation and Bellemead-Seton Hall Urban Renewal Association, L.P. (hereafter referred to in the singular as Bellemead). The judgment dismissed their consolidated complaints asserting tort claims arising out of the alleged precipitous three-story fall of a passenger elevator manufactured and maintained by Otis in a large office building owned and operated by Bellemead.
Upon careful review of the record, we conclude for the reasons stated below that the order granting summary judgment to defendants must be reversed.

PROCEDURAL BACKGROUND
The consolidated cases were sent out for trial in Ocean County on August 6, 2002. Prior to arranging for a panel of prospective jurors, the trial judge was advised by defendants' counsel of their intent to move for dismissal of the complaints on the grounds that, without expert testimony, plaintiffs could not establish a prima facie case of negligence based upon res ipsa loquitur. Supporting briefs were handed up by defendants.
Plaintiffs appear to have been surprised by this procedure. Two years earlier, the defendants had each moved for summary judgment on the same theory, namely that defendants' negligence could not be established absent presentation of evidence from an elevator expert. Those motions were denied by the first motion judge, who rendered separate opinions as to Otis and Bellemead. The judge concluded that summary judgment for defendants was not warranted because the three-pronged principle of res ipsa loquitur was applicable, allowing an inference of negligence because: (1) the occurrence of such an elevator fall itself ordinarily bespeaks negligence; (2) the instrumentality was within the defendants' exclusive control and; (3) there was no indication that the injury was attributable to negligence of the plaintiffs.
Those findings were unchallenged and undisturbed until the day of trial when defendants again raised the res ipsa issue. The trial judge elected to revisit the question, and to consider it as though raised upon motions for summary judgment, reasoning that it would be unwise to go through the cumbersome procedure of empaneling a jury and proceeding with the trial, if expert testimony supporting plaintiffs' complaints were to be deemed necessary.
Plaintiffs argued that, relying on the prior rulings as the law of the case, they came to trial understanding that an expert would not be required in order to establish a prima facie case. The trial judge pointed out that the law of the case doctrine was not mandatory, and that it does not provide a precluding effect to an interlocutory order denying summary judgment. Exercising his discretion, he concluded that our then recent decision in Gore v. Otis Elevator Co., 335 N.J.Super. 296, 762 A.2d 292 (App.Div.2000), compelled the conclusion that, because an elevator is a complex instrumentality, plaintiffs could not possibly establish a prima facie case without expert testimony. He ruled:
The facts here are insufficient to create a genuine issue of material fact as to whether the elevator dropping occurred more likely then not as a result of the elevator company's negligence in maintaining *102 the elevator. To serve as the foundation for the application of res ipsa loquitur, expert testimony should provide an explanation in lay terms of the possible ways in which the accident could have occurred that would, more likely then not, point to the defendants' negligence as a substantial contributing cause.
Plaintiffs did not, at that time, request a postponement of trial in order to secure an expert. In the brief supporting Gigante's motion for reconsideration, it was argued:
In the alternative and without prejudice to [its reconsideration argument] ... the interests of justice mandate that [the] Summary Judgment Order in favor of defendants be vacated and that plaintiffs be granted leave to present an expert report and expert testimony at trial.
The motion, and with it the request to present expert opinion, was denied.

THE FACTS
The standard for summary judgment expressed in Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995), has been summarized in Pressler, Current N.J. Court Rules, Comment R. 4:46-2 (Gann):
... movant is entitled to judgment, if on the full motion record, the adverse party, who is entitled to have the facts and inferences viewed most favorably to it, has not demonstrated the existence of a dispute whose resolution in his favor will ultimately entitle him to judgment.
The full motion record before the motion judge and this court presents these facts for consideration in a light most favorable to plaintiffs.
Plaintiffs Corrado Gigante and Joseph Rosenberg were returning from lunch to their jobs on the twenty-first floor of One Newark Center. The two entered an automatic elevator manufactured by defendant Otis and maintained by that defendant under an agreement with Bellemead, owner and operator of the building. One of the plaintiffs pushed the twenty-first floor button. A third individual pressed the button for the sixteenth floor. The elevator stopped at the sixth floor where a Bellemead building maintenance worker entered the elevator. The elevator began to ascend again, but commenced to shake at the twelfth floor, and precipitously dropped at least three floors in a freefall until it came to a sudden stop.
The elevator then began to ascend again, and plaintiffs were able to exit on the twenty-first floor. The maintenance worker remained on the elevator, having placed the elevator in "independent service" in order to return it to the first floor without passengers. On its way down, however, the elevator began to "shimmy" and the building maintenance worker was instructed by security to leave it in "parked position" at the fifteenth floor.
Defendant Otis had contracted with Bellemead to provide regular maintenance of the elevator which it manufactured and installed. In pertinent part, the contract provided that Otis "will periodically and systematically examine the Units using trained personnel directly employed and supervised by us. The examinations will include inspection, lubrication, adjustment, cleaning, and, if conditions warrant, repair or replacement of the following parts: ... controllers, selectors and dispatching equipment, relays, solid state components, transducers, resisters, ... contacts, ... timing devices, computer and micro-computer devices ...," among other identified components. In addition, the agreement promised that, "as conditions warrant, we will ... repair or replace ... hoist way and machine room elevator wiring." Otis agreed to have its maintenance *103 supervisor verify that the elevators conform to Otis requirements for maintenance quality and safety, and to periodically conduct field audits of its personnel to maintain high Otis quality standards. By addendum to its printed agreement, Otis contracted to "make necessary tests to determine if all circuits and time settings are properly adjusted, and make adjustments necessary for the system to perform as designed and installed by Otis ..." (Emphasis added in contractual quotes.)
The agreement further provided that Otis would indemnify and hold Bellemead harmless "... for losses due to personal injury or property damage to the extent caused by the negligent acts or omissions of Otis Elevator Company, its employees, agents and subcontractors during performance of the services under this contract, but not to the extent caused by others."
Steve Mason, an Otis maintenance employee, responded to Bellemead's call for assistance with the malfunctioning elevator after the incident. He inspected the elevator and then went to the "machine room" where he discovered a "chattering relay" that was engaging and disengaging at a rapid pace. The relay is an electrical component. He concluded that a circuit board needed to be changed, identified it with a schematic diagram, and replaced the printed circuit board. Other than changing that board, no other corrective measures were employed. He tested efficacy of the repair by riding on the elevator before it was placed back into service.
Mason was the person primarily responsible for maintenance of the elevator equipment at the Bellemead site. Asked at his deposition how often he checked the relays on the elevators at One Newark Center, he answered "not often. They're enclosed encapsulated relays. There is nothing to check." This was clarified by his indication that he did make "visual inspections" limited to see if "it was falling apart, wires fell off." His maintenance did not include testing either the relays or the circuit boards. Neither was periodic replacement of circuit boards part of his maintenance procedure.
According to Mason, replacement of the printed circuit board solved the problem as the circuit board drives the relay. Mason was unable to recall whether any circuit boards had previously failed.
Donald Nason, a longtime Otis employee, provided his "expert report" of the incident. He opined that Otis performed proper maintenance under the terms of the maintenance agreement, and that "... the elevator responded as intended when a problem occurs. The elevator stopped at a safe and designed stop ..." He also stated that, "Based on service report that an input/output solid state board was not sending the correct signals to the microprocessor, the elevator made a safe and designed stop ... The elevator functioned as designed."

THE LEGAL ARGUMENTS
Plaintiffs argue that summary judgment should not have been entered for defendants because the prior finding that res ipsa loquitur was applicable should have remained binding under the law of the case doctrine. They further urge that, in any event, res ipsa loquitur should have been applied, providing a circumstantial inference sufficient to establish a prima facie case that the elevator's fall probably resulted from defendants' negligence. The Gigantes also argue alternatively that, given the plaintiffs' understandable reliance on the prior decision, uncontested until the parties appeared for trial, the trial court should have granted leave for plaintiffs to retain a liability expert before ordering judgment.
*104 Defendants contend that the prior interlocutory order was subject to revision at any time before the entry of final judgment in the sound discretion of the court. Pointing to Sisler v. Gannett Co. Inc., 222 N.J.Super. 153, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988), defendants note that, although a prior decision in a case is entitled to considerable respect, the law of the case doctrine is not applicable where there is new controlling authority or indication of clear error. Moreover they point out, the law of the case principle is discretionary.
Defendants further argue that our decision in Gore, supra, 335 N.J.Super. 296, 762 A.2d 292 (App.Div. 2000) decided after the denial of their prior summary judgment motions, mandates that a plaintiff must present expert testimony to support a res ipsa inference any time that a complex instrumentality such as an elevator is involved.
As to plaintiffs' request for leave to retain a liability expert, defendants argue that this point was not raised below, and should not now be considered.

LAW OF THE CASE
In Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 95-96, 723 A.2d 45, 51 (1999), Justice Coleman summarized the res ipsa loquitur doctrine:
The doctrine of res ipsa loquitur, where applicable, is a method of circumstantially proving the existence of negligence. Tierney v. St. Michael's Medical Center, 214 N.J.Super. 27, 30, 518 A.2d 242[, 243-44] (App.Div.1986), certif. denied, 107 N.J. 114, 526 A.2d 184 (1987). Specifically, the doctrine permits an inference of defendant's want of due care when the following three conditions have been met: "(A) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of plaintiff's own voluntary act or neglect." Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404[, 408] (1958)...
Whether an occurrence ordinarily bespeaks negligence is based on the probabilities in favor of negligence. Hence, res ipsa is available if it is more probable than not that the defendant has been negligent. Buckelew [ v. Grossbard], supra, 87 N.J. [512] at 526, 435 A.2d 1150[, 1157]; Tierney, supra, 214 N.J.Super. at 30, 518 A.2d 242[, 243-44]. The doctrine does not shift the burden of persuasion to the defendant. Eaton v. Eaton, 119 N.J. 628, 638, 575 A.2d 858[, 863] (1990); Buckelew, supra, 87 N.J. at 526, 435 A.2d 1150[, 1157]. Rather, what "is required of defendant is an explanation, not exculpation." Buckelew, supra, 87 N.J. at 526, 435 A.2d 1150[, 1157]. It shifts to the defendant the obligation to explain the causative circumstances because of defendant's superior knowledge. Ibid. The doctrine confers upon the plaintiff an inference of negligence sufficient to establish a prima facie case at the close of plaintiff's evidence. Ibid.; see also Vespe v. DiMarco, 43 N.J. 430, 436-37, 204 A.2d 874[, 877-78] (1964).
As noted above, the first motion judge determined that plaintiffs could have had no role in causation, and that defendants had exclusive control over the elevator, together constituting the only persons responsible for maintenance and operation of the elevators as well as their manufacture, installation and design. Accepting for purposes of the motion plaintiffs' description of a precipitous three-story free fall in the elevator, he concluded that was sufficient to provide the third res ipsa loquitur prong of an occurrence that ordinarily bespeaks negligence.
*105 The respect and judicial deference required for the rulings of a coordinate judge in the same case, however, must be balanced against other considerations, particularly the impact of new law or new facts. See, e.g., Hart v. City of Jersey City, 308 N.J.Super. 487, 498, 706 A.2d 256, 261 (App.Div.1998); C.P. v. Township of Piscataway Bd. of Ed., 293 N.J.Super. 421, 431, 681 A.2d 105, 110 (App.Div.1996). Hence, were Gore, supra, correctly read to impose an absolute requirement in any and all circumstances that plaintiffs must present expert testimony in an elevator case, the trial judge need not have been governed by the prior ruling on res ipsa loquitur in exercising his discretion upon the last minute summary judgment motions.
Even if Gore was believed to govern the present case, however, such a discretionary call on a law of the case issue also required consideration of "those factors that bear on the pursuit of justice and, particularly, the search for truth," State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76, 86 (1985); Hart, supra, 308 N.J.Super. at 498, 706 A.2d at 261. Whether sua sponte, or by grant of the request contained in the Gigantes' motion for reconsideration, we believe that plaintiffs should have been granted the opportunity to submit an expert report on liability rather than precluded from presenting their case by entry of summary judgment on the day of trial. Plaintiffs understandably relied upon the prior ruling of a court in the same case. The pursuit of justice and, particularly, the search for truth recognized in Reldan and Hart, presented a compelling basis to at least afford opportunity for plaintiffs to secure the expert opinion deemed necessary by the successor judge. Thus, if for no other reason, we would reverse the grant of summary judgment and remand to afford opportunity to secure expert opinion, were we to agree with the substantive ruling under review.
Our analysis of that ruling begins with noting that it fails to consider the nature and extent of duty owed by defendants Otis and Bellemead to the plaintiffs on the facts set forth above.
An owner of a building has a non-delegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation. Mayer v. Fairlawn Jewish Ctr., 38 N.J. 549, 555, 186 A.2d 274, 277-78 (1962); De Los Santos v. Saddlehill, 211 N.J.Super. 253, 261-62, 511 A.2d 721, 725 (App.Div.1986), certif. denied, 107 N.J. 101, 526 A.2d 175 (1987). That the owner contracts for maintenance of an elevator does not relieve it of that duty, although it may secure indemnification by contract with the maintenance contractor (as here) or at common law. De Los Santos, 211 N.J.Super. at 263, 511 A.2d at 726.
As to the maintenance contractor, "[i]f an elevator is covered by a maintenance agreement, the ambit of a maintenance contractor's duty to third persons may be measured by the nature and scope of its contractual undertaking." Qualls v. U.S. Elevator Corp., 863 P.2d 457 (Okl. 1993); Evans v. Otis Elevator Co., 403 Pa. 13, 168 A.2d 573, 576 (1961); Williams v. Otis Elevator Co., 409 Pa.Super. 486, 598 A.2d 302, 303 (1991).
Here, Otis agreed with Bellemead that its maintenance would provide systematic examination by trained employees including, among other things, the inspection, repair or replacement of controllers, selectors, relays, solid state components, timing devices, computer and micro-computer devices and machine room elevator wiring. It also contracted to make necessary tests to determine if all circuits and time settings are properly adjusted, and to make adjustments necessary for the system to perform as designed and installed by Otis.
*106 The existence of a duty is a question of law decided by the courts, taking into account issues of fairness and policy, the foreseeability of injury to others arising from defendants' conduct, the nature of the risk posed by that conduct, the relationship of the parties, and the impact on the public of the imposition of a duty of care. Snyder v. American Assoc. of Blood Banks, 144 N.J. 269, 292-93, 676 A.2d 1036, 1048 (1996).
As a matter of law, we think it clear that the scope of defendants' duty to invitee passengers in Bellemead's elevators embraced the maintenance contract's contemplation of systematic inspection, testing and repair of relays, related solid state components and devices, wiring in the machine room, and all circuits and time settings required to ensure that the elevator system functioned safely.
Unlike the factual predicates in Gore and Jimenez v. GNOC Corp., 286 N.J.Super. 533, 544, 670 A.2d 24, 29 (App.Div. 1996), upon which Gore relies, two Otis employees have identified the cause of the elevator problem in this case. It was described by Steve Mason as a "chattering relay" engaging and disengaging rapidly, that was remedied by replacement of a circuit board. Set forth in other words, by Donald Nason, the cause was an "input/output solid state board" that "was not sending the correct signals to the microprocessor."
Without any factual basis apparent to us in the record, Nason concluded, nonetheless, that the elevator "functioned as designed" in that it made a "safe and designed stop." He did not address plaintiffs' three-story-free-fall version of that "safe and designed stop" nor, other than in entirely conclusory terms, net of underlying facts or explanation, did he offer a basis for his opinion that Otis' contractual maintenance was properly performed.
Mason's deposition testimony showed that he did not test the relays or solid state circuit boards, nor engage in any periodic replacement procedure. He merely eyeballed the relays to see if one "was falling apart, wires fell off." Indeed, even after Mason replaced the faulty circuit board, the only means he employed to test that control component, failure of which was apparently capable of causing an elevator to free-fall three stories, was to board and ride the elevator. On these non-esoteric facts, we hold that, while it might be helpful, jurors of common judgment and experience would require no expert testimony to address the issue whether defendants' met their duty to invitees sufficiently to inspect and test such critical components, nor to determine whether a negligent breach of that duty was a substantial contributing cause of the event described by plaintiffs.
Accepting plaintiffs' version of the elevator incident and the causation described by the Otis employees, summary judgment should not have been granted to defendants on the record before the court.[1] Accordingly, we must reverse and remand.
We believe it appropriate, however, to add a comment addressed to the stringent interpretation of the decisions in Gore and Jimenez, supra as argued by defendants and accepted in the judgment under review. Defendants contend that those cases mandate that expert testimony must *107 support every claim in which res ipsa loquitur is invoked by a plaintiff in a case involving a complex instrumentality. We think it appropriate to clarify that our reading of those cases, and the authorities upon which they rely, reveals their proper focus upon the sufficiency of evidence tending to reduce or rule out the likelihood of causes other than those attributable to the defendant(s). While the complexity of such evidence may typically require expert testimony to explain and evaluate it in lay language, it is also true that evidence sufficient to infer negligent causation need not always be as complex as the instrumentality.
Thus, for example, a passenger aircraft is surely a highly complex instrumentality. Assume, however, that one crashed early in a flight, and evidence showed that its gas tanks were empty, that it had not been refueled and that its pilot was seen drinking martinis in the airport lounge before takeoff. Those facts would be sufficient, in our view, to create an inference of probable negligence and causation sufficient to apply the res ipsa loquitur doctrine without mandatory expert embellishment. In short, judicial evaluation of the need for expert testimony should take account of the complexity of evidence related to instrumentality involved in an accident, rather than simply focusing on whether the instrumentality is complex.

CONCLUSION
The judgment below is reversed and remanded for further proceedings consistent with this opinion. If plaintiffs so elect, they should be allowed to present an expert report and testimony in support of their civil actions.
NOTES
[1] We have elected not to consider the impact of the report by Otis' employee-expert opining that the elevator functioned as designed. Strict product liability was not pleaded. To the extent defendants might seek to assign responsibility for failure of a solid state component to the manufacturer, Otis, as the manufacturer and installer of the elevator was, of course, also responsible for the safe performance of that component in the system.