58 A.3d 1221

MARTIN MAYER, PLAINTIFF–APPELLANT, v. ONCE UPON A ROSE, INC., AND SAMUEL GRUNWALD,[1] DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 14, 2013—Decided January 30, 2013.

---

---

[1] Defendant Samuel Grunwald is sometimes referred to as "Shlomi Grunwald" in the record, but we refer to him as Samuel Grunwald because that is the name he gave during his testimony at trial. Also, in some instances in the record, the Grunwalds' last name is incorrectly referred to as "Grumwald."

Before Judges PARRILLO, SABATINO and FASCIALE.

*Lynch, Lynch, Held, Rosenberg & Perkins and Forman Holt Eliades Ravin & Youngman,* attorneys for appellant (*Neil S. Weiner* and *Joseph M. Cerra,* on the brief).

*Martin, Kane & Kuper,* attorneys for respondents (*John F. Gillick,* on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

This negligence case arises from the personal injuries that a caterer sustained when a glass vase shattered and his hands were struck and cut by the propelled fragments. The vase contained a floral arrangement, which a florist working at the same catered event had been carrying across the room. The injured caterer sued the florist and the floral company, contending that either the florist had been gripping the vase in a dangerous manner or that the vase had not been adequately inspected for cracks before it was brought to the site.

The trial court granted defendants a directed verdict at the close of the caterer's proofs before the jury, mainly because the caterer had not retained a liability expert to explain why the vase had shattered. We reverse, concluding that it was not essential for this plaintiff to have retained a liability expert in these circumstances.

I.

We describe the facts in a light most favorable to plaintiff. *See R.* 4:37–2(b). On February 15, 2009, plaintiff Martin Mayer, a professional caterer, was setting up for an engagement party at a synagogue in Passaic. Defendant Samuel Grunwald, a florist employed by co-defendant, Once Upon a Rose, Inc., also was at the synagogue with his wife, getting the floral arrangements in place for that same engagement party.

Plaintiff arrived at the synagogue at approximately 3:00 p.m. With the help of his assistant, plaintiff started bringing the food

inside. He also moved tables around the banquet room under the direction of the party planner.

Meanwhile, Mr. Grunwald and his wife were setting up the floral arrangements in the room. Mrs. Grunwald is the sole owner of Once Upon a Rose, Inc., and Mr. Grunwald is an employee of the company. Mr. and Mrs. Grunwald brought all the floral materials to the synagogue, and they assembled the arrangements at the event.

The floral vases were stored in individual boxes, which had then been placed in milk crates. The Grunwalds used two similar types of vases, which were both made of glass and had the same width, except some were a couple of inches taller than the others. They assembled five or six arrangements at the synagogue.

According to Mrs. Grunwald's testimony, the same glass vases had previously been used between ten and thirty times. Mrs. Grunwald stated that she had checked all the vases that day for chips and cracks and found none. She did not remove any vases while making the floral arrangements that day. However, she insisted that she would have removed any vase if it had been found chipped or cracked.

During the course of setting up for the engagement party, Mr. Grunwald began to move a floral vase from one table to another. The tables were ten to fifteen feet apart. The vase in question was a tall glass square, which was flat on all sides. It had bamboo and flowers extending a few feet over the top and was nearly filled with water.

From about ten to twelve feet away, plaintiff observed Mr. Grunwald hold the vase with outstretched arms. According to plaintiff, Mr. Grunwald appeared to be applying pressure with the palms of his hands on the sides of the vase, about halfway up on opposite sides.[2]

---

[2] Mr. Grunwald testified that he had carried the vase in a different manner. As he recalled it, his hands were on the sides near the bottom of the vase, with

No one else was touching the vase as Mr. Grunwald lifted it. He testified that he felt the vase "caving in" and a sensation of the vase pressing inwards.

Upon observing Mr. Grunwald attempting to carry the vase on his own, plaintiff ran towards Mr. Grunwald to help him. According to plaintiff, as he approached, he said in an undertone, "you're going to hurt yourself."

As plaintiff reached his hands under the vase, the glass vase shattered. Shards of broken glass fell into plaintiff's hands.

The glass shards severely cut plaintiff's hands, which began bleeding. He was in "excruciating pain." Plaintiff was transported to a local hospital with Mr. Grunwald, who also had been injured.

Plaintiff suffered multiple tendon cuts and nerve damage from the glass shards. He underwent emergency surgery that same day. Plaintiff had physical therapy for over six months to restore movement to his hands. His injuries from this incident have caused him permanent scarring, a loss of grip strength, and various alleged lifestyle restrictions.

In this ensuing lawsuit, plaintiff invoked the doctrine of res ipsa loquitur. He argued that he was blameless in connection with the incident, that the vase had been in defendants' exclusive control, and that it was not likely to have exploded in the absence of defendants' fault. Defendants, meanwhile, took the position that this was a spontaneous accident that they could not have reasonably prevented.

At trial, plaintiff testified about the events at the synagogue and his resulting injuries. He also presented testimony from the Grunwalds, who were called as adverse parties, and from an

---

two or three fingers underneath it. According to Mr. Grunwald, he did not press the vase against his chest or stomach, but rather carried it with partially extended arms.

orthopedic surgeon who gave expert testimony about the hand injuries.

After plaintiff rested his case, defendants moved for a directed verdict. The trial court granted their motion. In the course of his oral ruling, the judge observed that he had "two problems" with plaintiff's theory of recovery:

> *Number one, with regard to pressure having any part whatsoever in the implosion or collapse of this vase, the [c]ourt determines that that is an issue that would require expert testimony.* It would be extremely speculative and impermissible to allow the jury to speculate as to whether the way the vase was being carried somehow played a part in its failure. If in fact that is a theory to be pursued, *that theory would require expert testimony in order to deal with the issue of ... how much pressure, what type of pressure, thickness of glass, ... [and] other factors and variables that would impact or support such a theory.* And we do not have that ... in this case.
>
> *The second problem that the [c]ourt has is ... as to whether it is more probable under these circumstances in order to invoke the res ipsa doctrine whether in fact the accident bespeaks negligence.* And that is whether it is more probable than not that [Mr. Grunwald's] negligence was a proximate cause of the mishap. *We don't know what happened.* And the issue is ... is it more probable than not that [Mr. Grunwald's] negligence was the proximate cause of the mishap?
>
> *There are other potential explanations.* And as [plaintiff's counsel] points out, he need not rule out those other explanations, but there are other explanations. *One looming explanation is that there could have been a product defect.* ...
>
> . . . .
>
> It's also possible that [the Grunwalds] were negligent. *It's possible that there was something that they did with regard to this vase that would have resulted in this accident. But the [c]ourt can't rely on possibilities.* It must be that it's probable that there was negligence on the part of [Mr. Grunwald] sufficient to invoke the doctrine of *res ipsa loquitur.*

[Emphasis added.]

Based on this analysis, the judge discharged the jury and entered final judgment in defendants' favor.

Plaintiff now appeals. He principally argues that the trial court erred in faulting plaintiff for not calling a liability expert. As a secondary point, plaintiff contends that the court was improperly swayed by the mere possibility of other explanations for what may have caused the glass explosion.

## II.

■ A motion for involuntary dismissal at the end of a plaintiff's case is governed by *Rule* 4:37–2(b). The rule instructs that "such [a] motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." *Ibid.* "[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." *Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969).

■ "[T]he judicial function [in evaluating a motion for a directed verdict] is quite a mechanical one." *Ibid.* "The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." *Id.* at 5–6, 258 *A.*2d 706; *see also Quinlan v. Curtiss–Wright Corp.,* 204 *N.J.* 239, 276–77, 8 *A.*3d 209 (2010) (noting that "the appropriate focus for the trial court and the Appellate Division [is] not whether there was some contrary evidence; instead the focus [should be] on whether there [is] too little evidence . . . presented by plaintiff to get to the jury on the issue at all").

Defendants' motion for a directed verdict in the present case challenged plaintiff's invocation of the doctrine of res ipsa loquitur. Our Supreme Court has described that doctrine as follows:

In any case founded upon negligence, the proofs ultimately must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries. *Res ipsa loquitur,* a Latin phrase meaning "the thing speaks for itself," is a rule that governs the availability and adequacy of evidence of negligence in special circumstances. The rule creates an allowable inference of the defendant's want of due care when the following conditions have been shown: (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality [causing the injury] was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.

[*Szalontai v. Yazbo's Sports Café,* 183 *N.J.* 386, 398, 874 *A.*2d 507 (2005) (quoting *Brown v. Racquet Club of Bricktown,* 95 *N.J.* 280, 288–89, 471 *A.*2d 25 (1984)).]

The res ipsa loquitur doctrine is based upon considerations of public policy, allowing a blameless injured plaintiff to obtain an inference of negligence where certain required factors are present. In essence, the doctrine "plac[es] the duty of producing evidence on the party who has superior knowledge or opportunity for explanation of the causative circumstances." *Buckelew v. Grossbard*, 87 *N.J.* 512, 526, 435 *A.*2d 1150 (1981). Res ipsa loquitur "in effect creates a permissive presumption that a set of facts furnish reasonable grounds for the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred." *Szalontai, supra,* 183 *N.J.* at 398, 874 *A.*2d 507 (quoting *Brown, supra,* 95 *N.J.* at 288–89, 471 *A.*2d 25). The jury is free to accept or reject that permissible inference. *Ibid.*

An important aspect of the res ipsa loquitur doctrine is its role at trial in repelling a defendant's motion for a directed verdict. "Once res ipsa loquitur is established, the case should go to the jury *unless defendant's countervailing proof is so strong as to admit of no reasonable doubt as to the absence of negligence.*" *Id.* at 398, 874 *A.*2d 507 (emphasis added) (quoting *Brown, supra,* 95 *N.J.* at 289, 471 *A.*2d 25). "In a case in which res ipsa loquitur applies, a directed verdict against the plaintiff can occur *only if the defendant produces evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable men could no longer accept it.*" *Id.* at 399, 874 *A.*2d 507 (emphasis added) (quoting *Brown, supra,* 95 *N.J.* at 289, 471 *A.*2d 25).

The res ipsa loquitur doctrine has been successfully applied on several occasions to cases involving exploding glass bottles. *See Bornstein v. Metro. Bottling Co.*, 26 *N.J.* 263, 274–75, 139 *A.*2d 404 (1958); *see also Stolle v. Anheuser–Busch, Inc.*, 307 *Mo.* 520, 271 *S.W.* 497, 499–500 (1925); *Can. Dry Ginger Ale Co. v. Jochum*, 43 *A.*2d 42, 43–44 (D.C.1945). Although those bottling cases are somewhat distinguishable from the present case because they involved pressurized glass, they do illustrate the fundamental

proposition that the res ipsa doctrine can apply to accidents involving a glass vessel that had been in a defendant's exclusive control.

Here, the trial court declined to allow the jury to consider any inference of negligence on the part of defendants. A focal point of the court's decision was its belief that plaintiff was obligated to present a liability expert to explain why the glass vase shattered. We disagree that such an expert witness was required.

In *Jerista v. Murray,* 185 *N.J.* 175, 195, 883 *A.*2d 350 (2005), a leading case in which the plaintiff invoked the res ipsa loquitur doctrine, the Supreme Court concluded that expert testimony was not required for a *"res ipsa* inference" to be made with respect to injuries caused by an automatic door. The plaintiffs in *Jerista* brought a malpractice claim against their prior attorney, whose inaction had allegedly led to the dismissal of their negligence complaint against a supermarket. *Id.* at 180, 883 *A.*2d 350. The defendant attorney argued that he had not caused his former clients harm, because their lack of supporting expert testimony on liability would have prevented them anyway from obtaining a res ipsa inference, and consequently they did not have a provable claim in the underlying suit. *Id.* at 180–81, 883 *A.*2d 350. The Supreme Court rejected this court's "sweeping suggesti[on] ... that in almost all complex instrumentality cases a *res ipsa* inference will be conditioned on the production of expert testimony." *Id.* at 197, 883 *A.*2d 350. Instead, the Court determined that the pertinent question is "whether based on *common knowledge* the balance of probabilities favors negligence, thus rendering fair the drawing of a *res ipsa* inference." *Id.* at 199, 883 *A.*2d 350 (emphasis added).

As to the necessity of liability experts, the Court instructed in *Jerista* that "[o]nly when the *res ipsa* inference falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge is expert testimony required." *Ibid.; see also N.J.R.E.* 702 (limiting the admission of expert testimony to evidence or issues requiring "specialized

knowledge" for a factfinder to understand). "A jury does not need an expert to tell it what it already knows." *Jerista, supra,* 185 *N.J.* at 197, 883 *A.*2d 350.

The Court concluded in *Jerista* that the plaintiffs could have obtained a res ipsa inference absent expert testimony because, even though automatic doors are complex machines, "based on common knowledge" it is improbable that such a door would close unexpectedly on a person unless it was negligently maintained. *Ibid.* "When the average juror can deduce what happened without resort to scientific or technical knowledge, expert testimony is not mandated." *Id.* at 200, 883 *A.*2d 350.

Similarly, in *Rosenberg v. Otis Elevator Co.,* 366 *N.J.Super.* 292, 305, 841 *A.*2d 99 (App.Div.2004), no expert testimony was required to assist the jury in evaluating an incident where an elevator had dropped at least three floors in a freefall before coming to a sudden stop. This court reasoned that the jurors could make a rational inference, unaided by expert testimony, that an elevator would not have fallen in such a precipitous manner unless the defendant had breached its duty and caused the malfunction. *Ibid.*

By contrast, in *Buckelew, supra,* 87 *N.J.* at 527, 435 *A.*2d 1150, a liability expert was needed where the defendant physician had cut into the plaintiff's bladder during surgery. An expert was required in that professional liability context to address the relevant standard of care for such surgery because the Court "[could] not say, *as a matter of common understanding,* the injury to plaintiff's bladder raises an inference of negligence." *Ibid.* (emphasis added).

Applying these principles here, we conclude that the trial court erred in insisting that plaintiff had to present a liability expert to the jury before a res ipsa inference could be permitted. A jury does not need an expert to tell it that excessive pressure placed on glass can cause it to shatter. That basic notion lies within the common knowledge of jurors and does not require

scientific or technical knowledge. Glass does not typically shatter on its own. The average juror should readily appreciate that too much pressure applied to glass can cause it to break. It is also common knowledge that glass is fragile, as evidenced by how glass is customarily transported with protective material to prevent breakage.

To be sure, expert testimony in this case might have been helpful, but it was not essential to plaintiff's case. The shattering of the vase was an incident arguably bespeaking negligence,[3] and one that fell within a juror's common knowledge. This is not a professional liability case where a nuanced or complex standard of care is implicated. Moreover, it is undisputed that plaintiff himself did not cause the vase to shatter as he attempted to intercede. In addition, the vase had been in defendants' exclusive control up until the moment it exploded.

We also disagree with the trial court that the theoretical possibility that the glass was defectively manufactured foreclosed plaintiff's invocation of res ipsa loquitur. As defendants noted, they had used the vase many times before without incident. Such repetitive previous use of the vase makes it highly conjectural that the vessel had been fabricated with defective glass. Although we cannot totally rule out the possibility of a product defect, defendants failed to provide evidential support for such a counter-theory that "destroy[ed] any reasonable inference of negligence, or so completely contradict[ed] it that reasonable men could no longer accept it." *Szalontai, supra,* 183 *N.J.* at 399, 874 *A.*2d 507.

In sum, although the jurors rationally could have ruled against plaintiff on the merits, the circumstances here did not warrant the

---

[3] As factfinders, the jurors properly could resolve the discrepancy between plaintiff's description of how Mr. Grunwald was clutching the vase, and the latter's own account of where his hands had been positioned. Beyond that, the jurors could assess whether or not it was unreasonable for Mr. Grunwald to have held the vase in that manner.

trial court's outright dismissal of plaintiff's case before they had a fair opportunity to consider it.

The directed verdict for defendants is reversed and the matter is remanded for a new trial.