**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2615-24

DIANE JONES,

    Plaintiff-Appellant,

v.

NEWARK HOUSING AUTHORITY,

    Defendant-Respondent.

_____

Submitted January 21, 2026 – Decided April 13, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5481-19.

James Vasquez, PC, attorneys for appellant (James Vasquez and Paul F. O'Reilly, on the briefs).

Biancamano & Di Stefano, PC, attorneys for respondent (James G. Serritella, on the brief).

PER CURIAM

    In this personal injury case, plaintiff Diane Jones appeals from the March

21, 2025 Law Division order granting summary judgment in favor of defendant

Newark Housing Authority (NHA). Jones, a tenant of an NHA apartment, suffered significant spinal injuries requiring three surgeries when one panel of her bedroom's bifold closet door fell off its hinges and struck her in the back, knocking her to the floor. Jones testified that the door was visibly rotting, splitting down the middle, with nails coming loose and the door coming out of its frame. Twelve days before the incident, Jones reported the broken door to the building manager and handyman, but no repairs or inspections were performed in response to her complaint. Plaintiff's expert concluded that the door was not properly installed or secured, but the trial court determined that he rendered a net opinion—a ruling that plaintiff does not contest on appeal. The court further held that plaintiff's case required expert testimony to establish the standard of care, and on that basis granted summary judgment to defendant. After carefully reviewing the record in light of the governing legal principles, we conclude that the danger at issue in this case is within a jury's common knowledge and therefore reverse and remand for proceedings consistent with this opinion.

I.

We discern the following pertinent facts and procedural history from the record. This case arises from an October 2, 2018 accident in which one panel

2                                                                                    A-2615-24

of the bifold closet door in plaintiff's bedroom fell off its hinges and struck plaintiff in the back, knocking her to the floor and causing significant spinal injuries.

At the time, plaintiff lived alone in a housing complex apartment owned and managed by defendant. Two events leading up to the accident are relevant to this litigation. Plaintiff testified at her deposition that on September 20, 2018—twelve days before the accident—the bedroom closet door broke, and plaintiff reported the issue to NHA manager Rita Baskerville-Robinson and to her building's handyman.[1] Plaintiff's deposition testimony is unclear as to whether, in this September incident, the door panel fell to the ground or just began to split, splinter, or come off its hinges. Plaintiff testified:

> A. . . . I had reported it in September, the door was broken and nobody came to fix it.
>
> Q. Had it fallen down before the day of the [October 2] accident?
> A. Yes, it did.
>
> Q. Once or more than once?

---

[1] Defendant denies that it received "any notice of any defective condition prior to the alleged incident" and asserts that "all applicable work orders were turned over which reflect [plaintiff's] requests for repairs and the work that was performed."

A-2615-24

A. Once.  It fell and I went and told Miss Robinson at the time, Miss Robinson, you all need to come fix my door.  It broke.  Nobody came.

However, plaintiff then testified:

Q. What was wrong with the door in September when you told this to Miss Robinson?

A. It was splitting.  The way they had the brackets in it it was splitting down the middle and I said, "Miss Robinson, my door is broken."  They had six brackets in the middle and on the end to keep the door up, but the nails start coming out the door and the door start splitting down the middle. . . .

Q. Did the door fall or come out in September at that time before the accident or was it just broken?

A. It was just broken.

Q. Okay.  So the day of the accident, October 2nd, was that the first time that it fell?

A. Yeah.  That's the first time it fell and hit me.

Plaintiff also testified that the door was "old" and made of "heavy wood."

The following exchange took place during her deposition:

Q. Do you know what caused that door to fall?

A. It was rotten.  The wood was rotten.  The man[2] . . . [came] and told me the door was rotten.  It was falling apart.  It was coming out the frame.  Every time they

_____

[2]  Plaintiff appears to be referring to a city inspector who examined the door in 2019.

put it back they had six brackets. The end of the door the things to hold the door on they had about eight on that door and it kept falling because it was rotten.

No one came to inspect or fix the door in response to plaintiff's alleged September repair request. Plaintiff testified that she spoke to the building's handyman about fixing the door, and he said, "we can't do it right now."

The accident occurred on October 2. Plaintiff was making her bed, with her back to the closet, when one panel of the closet door fell, striking her in the back and knocking her to the floor. The following day, plaintiff went to the hospital and also reported the incident to defendant.

In November, an NHA maintenance employee put the fallen panel back in place and installed brackets in order to keep it upright. Plaintiff then placed a dresser in front of the panel so that it would not fall again. Sometime in 2019, an inspector from the city of Newark came and examined the door. According to plaintiff, the inspector told her that the door was "rotten," "old," and "falling apart."

On July 26, 2019, plaintiff filed a personal injury complaint against defendant. In September 2019, plaintiff retained expert witness Gary L. Montroy to conduct an inspection of the premises and issue a report documenting his findings. Montroy's report concluded that the door "was not

properly installed and secured" and that this "allowed the door to fall on [plaintiff]." He further opined that the condition of the door violated multiple building codes and regulations. However, in his 2022 deposition, Montroy testified that that he did not actually go to the apartment himself but instead sent his associate, Eric Collarzo. Montroy admitted he did not know if anyone was present when Collarzo conducted the inspection, or if the premises were in the same condition as on the date of the accident. Furthermore, Montroy testified that he was unable to describe the door and did not have any knowledge of its size, weight, dimension, or what type of door it was. Finally, he testified that he did not investigate how the door was installed; did not know how or when it was installed; did not know how it was maintained; had no knowledge of the contents of plaintiff's closet when the panel fell; and, overall, did not have any knowledge of what caused the panel to fall.

In her 2021 deposition, NHA manager Baskerville-Robinson testified that NHA keeps copies of all complaints made by a tenant in that tenant's "resident file." Plaintiff's counsel requested that defendant produce plaintiff's resident file, but, according to plaintiff, defendant never did so. Defendant maintains that "all applicable work orders were turned over which reflect [plaintiff's] requests for repairs and the work that was performed."

A-2615-24

On February 12, 2025, defendant moved for summary judgment, which plaintiff opposed. The trial court held a hearing on March 21. At the conclusion of the hearing, the court granted summary judgment to defendant in an oral opinion, concluding that plaintiff's case required expert testimony and that Montroy's report was a net opinion.

This appeal followed. Plaintiff asserts that expert testimony was not required to establish the standard of care or defendant's breach, because the danger at issue is within a jury's common knowledge. In reply, defendant argues that expert testimony is necessary because plaintiff has no expertise in the construction or maintenance of closet doors and cannot establish by her lay testimony that the door was negligently installed or maintained.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. Appellate courts review decisions on a motion for summary judgment de novo, applying "the same standard as the trial court." State v. Anderson, 248 N.J. 53, 67 (2021) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). Courts must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)). In contrast, the court must deny summary judgment if the evidence is conflicting and there are material facts in dispute that a rational factfinder could resolve in favor of the non-movant. Mangual v. Berezinsky, 428 N.J. Super. 299, 308-09 (App. Div. 2012); accord Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023) (courts "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the" non-movant (quoting Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023))).

In applying this standard, the "court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [them] the benefit of all legitimate inferences which can be deduced therefrom." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995) (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991) and S. Pressler, Current N.J. Court Rules, R. 4:40-2 comment (1991)); see also Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023) (allowing "reasonable inferences" from the record in the non-movant's favor).

A-2615-24

Turning to substantive legal principles, to sustain a negligence claim, a plaintiff must demonstrate: (1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015). The plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004), and "must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries." Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 554 (App. Div. 2020). "To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 377-78 (quoting Fernandes v. DAR Dev. Corp., 222 N.J. 390, 404 (2015)).

"[A] landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord retains control." J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 218 (2019) (quoting Scully v. Fitzgerald, 179 N.J. 114, 121-22 (2004)). "That duty requires the landlord to maintain that property in a reasonably safe condition," ibid. (quoting Scully, 178 N.J. at 122), which includes "proper installation and attentive repair work," Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 54 (App. Div. 1994). However, "a landlord is liable only

9

for injurious consequences to a tenant by reason of defects of which he has knowledge or of defects which have existed for so long a time that . . . he had both an opportunity to discover and to remedy." Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48, 52 (App. Div.), aff'd, 63 N.J. 577 (1973) (internal quotation marks and citation omitted).

To establish a landlord's negligence, a plaintiff may refer to statutes and regulations that govern a landlord's obligation to maintain the premises. While "the violation of a statutory duty of care is not conclusive on the issue of negligence . . . it is a circumstance which the trier of fact should consider in assessing liability." Trentacost v. Brussel, 82 N.J. 214, 230 (1980) (quoting Braitman v. Overlook Terrace Corp., 68 N.J. 368, 385 (1975)). Relevant here, applicable regulations require the owner of multiple dwelling units to keep the premises free from all hazards to the health and safety of occupants, N.J.A.C. 5:10-6.1, and to maintain every unit of dwelling space "[so] as to be fit for human use and habitation and to prevent progressive deterioration of the unit to the detriment of the health, safety and well-being of its occupants," N.J.A.C. 5:10-6.3. Furthermore, N.J.A.C. 5:10-8.4 requires that "[a]ll doors shall be so maintained that they can be readily opened and closed."

Here, the central issue is whether plaintiff was required to provide expert testimony to establish the applicable standard of care and whether defendant breached its duty.

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). In those instances, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent [person] in the position of the defendant would have taken." Id. at 406-07 (first three alterations in original) (quoting Sanzari, 34 N.J. at 134). "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' Sanzari, 34 N.J. at 134-35, and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert

testimony on the subject,' Giantonnio, 291 N.J. Super. at 42." Ibid. (alterations in original) (citations modified); see N.J.R.E. 702.

"[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). In cases where "the factfinder would not be expected to have sufficient knowledge or experience," expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

Expert testimony has been required to establish an accepted standard of care with regard to: "ordinary dental or medical malpractice," Sanzari, 34 N.J. at 134-35; "the responsibilities and functions of real-estate brokers with respect to open-house tours," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993); "the safe conduct of a funeral procession," Giantonnio, 291 N.J. Super. at 44; "applying pertinent skydiving guidelines," Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div. 2002); the "repair and inspection" of automobile engines, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226,

237 (App. Div. 2012); "the inspection of fire sprinklers by qualified contractors," Davis, 219 N.J. at 408; and the duties of a licensed nurse when "a patient dislodges [their] [medical] tube and refuses its reinsertion," Cowley v. Virtua Health Sys., 242 N.J. 1, 8 (2020).

In contrast, our courts have held expert testimony is not required to explain: "the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material," Scully, 179 N.J. at 127; whether the use of the same pattern vinyl floor covering on both a hallway and the foyer one step down "camouflaged" the step and created an unreasonable risk a person might trip, Hopkins, 132 N.J. at 432, 450-51; the danger of a missing brick in the top step of a front patio staircase, Berger v. Shapiro, 30 N.J. 89, 95 (1959); the risk that a dark, unlit sunken foyer might lead a houseguest to trip and fall, Campbell v. Hastings, 348 N.J. Super. 264, 270-71 (App. Div. 2002); the risk that applying pressure with the palms of one's hands to the sides of a glass vase could cause it to shatter, Mayer v. Once Upon A Rose, Inc., 429 N.J. Super. 365, 370 (App. Div. 2013); and whether a hole in the grass was "left unattended too long without durable warnings or barriers," Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 508 (App. Div. 2017).

We next apply these legal principles to the present facts, mindful that the summary judgment standard requires that we "accept as true all the evidence which supports [plaintiff's] position" and "accord [her] the benefit of all legitimate inferences which can be deduced therefrom." Brill, 142 N.J. at 535 (internal citations omitted). Viewing plaintiff's testimony through that lens, we conclude the door panel was visibly deteriorating to such an extent that a lay person could appreciate the risk of its falling and injuring plaintiff without the assistance of expert testimony. An old heavy wooden closet door coming off its frame due to bracket screws coming loose from rotted wood presents an obvious and foreseeable danger. We believe a jury is competent to evaluate whether the door panel was at such risk of falling and injuring someone that defendant's failure to inspect, remove, or repair it was a breach of its duty to maintain the property in a reasonably safe condition. As a result, expert testimony was not required, and the trial court therefore erred in granting summary judgment to defendant. See Scully, 179 N.J. at 130 ("It is for the jury to determine what evidence is credible, what inferences are to be drawn from the evidence, whether defendant breached a duty owed to plaintiff, and last, whether that breach was a

14                                                                    A-2615-24

proximate cause of the injury suffered by plaintiff. The trial court erred in denying the jury the opportunity to decide those issues.").

Reversed and remanded for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2615-24